THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FREDERICK SCHNEIDER | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 06-3200 (JBS) |
| v. | : | |
| UNITED STATES OF AMERICA, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, KENNETH ENG, KENNETH ENG, NEW JERSEY DEPT. OF ENVIRONMENTAL PROTECTION, BRAD CAMPBELL, EDWARD M. CHOROMANSKI, TIM P. DAVIS, N.J. DEPT. OF HEALTH & SENIOR SERVICES, FRED JACOBS, ATLANTIC COUNTY GOVERNMENT, ATLANTIC COUNTY HEALTH DEPT., JAMES WITKOSKIE, PATRICIA DIAMOND, PATRICK DILLON, MARILYN GERHARDT, CITY OF ATLANTIC CITY, ATLANTIC CITY HEALTH DEPT., RONALD L. CASH, JANET REINHARD, MARTIN CONNIE, ATLANTIC CITY SHOWBOAT, INC., BEST OF LIFE PARK APARTMENTS, MAURY BLUMBERG, HENRY COHEN, CONECTIV THERMAL SYSTEMS, SIDNEY CRANE, LOU DEFEO, STAN DYNER, CLAIRE GOLDBLATT, THOMAS HERZOG, ROBERT KIEJDAN, CAROLE A. KOOTMAN, KEN LEHBERGER, MARVIN MILLER, SEYMOUR ROSEN, IRVING SHEINFELD, HERBERT STERN, TRUMP TAJ MAHAL ASSOCIATES, LLC, MARTIN WOOD | : : : : : : : : : : : : : : : : : : : : : : : : : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Mr. Frederick Schneider
129 S. Virginia Avenue - #1207
Atlantic City, NJ 08401
     Plaintiff pro se

Kevin P. Auerbacher, Deputy Attorney General
OFFICE OF THE NJ ATTORNEY GENERAL
Richard J. Hughes Justice Complex
PO Box 093
Trenton, NJ 08625
     Attorney for Defendants State of New Jersey et al.

Anthony Pagano, Esq.
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 Atlantic Avenue
8th Floor
Atlantic City, NJ 08401
     Attorney for Defendants Atlantic County Government et al.

John Charles Hegarty, Esq.
SOLICITORS OFFICE FOR ATLANTIC CITY
City Hall
1301 Bacharach Boulevard
Atlantic City, NJ 08401-3603
     Attorney for Defendants City of Atlantic City et al.

Michael Gerard Murphy, Esq.
BEVERIDGE & DIAMOND, PC
26 Franklin Street
Tenafly, NJ 07670
     Attorney for Defendants Atlantic City Showboat, Inc. et al.

Jeffrey David Light, Esq.
GOLDENBERG, MACKLER, SAYEGH, MINTZ,
PFEFFER, BONCHI & GILL, PC
660 New Road
Suite 1A
Northfield, NJ 08225
     Attorney for Defendants Best of Life Park Apartments et al.

James J. O'Hara, Esq.
GRAHAM CURTIN
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
     Attorney for Defendants Connectiv Thermal Systems et al.

2

**SIMANDLE**, District Judge:

Plaintiff Frederick Schneider, pro se, filed the instant action against forty above-captioned defendants.  Plaintiff asserts four claims against the defendants premised on New Jersey tort law, and further alleges that the defendants infringed upon his civil rights in violation of various federal laws.

Presently before the Court are five motions to dismiss [Docket Items 56, 66, 67, 68, and 69] and a motion for injunctive relief requesting that the Court restrain Plaintiff from asserting claims against certain defendants in the future [Docket Item 66].  The moving defendants argue that Plaintiff's claims against them are barred by the doctrine of res judicata, because Plaintiff's suit simply repackages the claims he brought in an earlier state court action that was dismissed with prejudice.  For the following reasons, the Court will dismiss Plaintiff's claims against those defendants who were parties to the state court lawsuit, but will deny the motions of the defendants who were not previously sued in state court.  The Court will also deny the motion for injunctive relief.

I.   **BACKGROUND**

   **A.   Facts**

On April 1, 2003, Plaintiff Frederick Schneider moved into an apartment unit at the Best of Life Park Apartments ("BLPA") complex in Atlantic City, New Jersey.  (Am. Comp. ¶ 9.)  The BLPA

3

complex is located between fifty and two-hundred yards from two
Atlantic City casinos – the Trump Taj Mahal Casino ("Taj Mahal")
and the Atlantic City Showboat Casino ("Showboat").  From the
time Plaintiff moved to his BLPA apartment, he observed the two
casino sites emitting a substance that he has variously described
as "smoky emissions," "filmy moist pellets," and an "off-white
moist mist."  (Id.)  According to Plaintiff, this substance
drifts from the casinos to the neighboring BLPA complex, where,
as Plaintiff alleges in his amended complaint, it has soiled
tenants' vehicles and entered Plaintiff's living unit.  (Id. at
¶¶ 9, 16.)  The complaint states that on account of his age,
Plaintiff has a "vulnerable respiratory system," and that the
exposure to the casino emissions has had a deleterious effect on
his health.  (Id.)  Specifically, Plaintiff alleges that since
March 2004, he has suffered from "insufficient pulmonary
function" and that he has been diagnosed with progressive
pulmonary failure.  (Id. at ¶ 16.)

Plaintiff has undertaken an extensive range of efforts to
address his concerns over the misty substance.  In July 2004,
Plaintiff wrote a letter to the Taj Mahal to complain about its
emissions.  (Pl. Br. 3.)  The Taj Mahal's Security Department
apparently investigated the matter and observed "a white/grey
substance similar to road salt" on some vehicles in the BLPA
parking lot, but failed to take further action.  (Id.)

On February 11, 2005, Plaintiff filed a complaint with
Kenneth Eng, an employee of the United States Environmental
Protection Agency ("EPA"), regarding the casino emissions.  (Am.
Compl. ¶ 9.)  According to Plaintiff, on May 18, 2005, Mr. Eng
sent two EPA investigators to look into the emissions alleged in
Plaintiff's complaint.  (Id.)  The investigators conducted what
Plaintiff considers to be an inadequate investigation and issued
"an inaccurate [and] false report" that concluded that the casino
emissions did not pose a health risk to Plaintiff and other BLPA
tenants.  (Id.)  On June 9, 2005, Mr. Eng wrote Plaintiff a
letter in which Mr. Eng advised Plaintiff that the EPA would not
order the Taj Mahal and the Showboat casinos to cease their
emissions because Plaintiff's complaint "had no merit."  (Id.)

Also on February 11, 2005, Plaintiff filed a complaint with
the New Jersey Department of Environmental Protection ("NJDEP")
regarding the casino emissions.  (Id. at ¶ 10.)  NJDEP dispatched
Tim P. Davis to investigate Plaintiff's allegations, and Mr.
Davis made three visits to the casinos and BLPA between February
and May, 2005.  (Id.)  While Mr. Davis did not observe any smoke
over the course of his investigations, he "was able to observe a
steam plume emanating from the cooling tower" on one of the
casinos.  (Id.)  NJDEP, like the EPA, concluded that the casinos
did not pose a health risk to Plaintiff, and declined to take
further action in response to Plaintiff's complaint.  (Id.)

Plaintiff filed similar complaints with the Atlantic County and Atlantic City Health Departments and the New Jersey Department of Health and Senior Services ("NJDHSS").  (Id. at ¶¶ 12-13.)  On February 23, 2005, Plaintiff was informed by the Atlantic County Health Department that "the Atlantic City Health Department provides environmental health services within the jurisdiction of Atlantic City."  (Id. at ¶ 12.)  The Atlantic City Health Department, in turn, sent Martin J. Connie, Principal Sanitary Inspector, to investigate the casino emissions.  (Id. at ¶ 13.)  Plaintiff subsequently received a letter from Mr. Connie, dated November 2, 2005, concluding that the emissions did not present a health risk to Plaintiff.  (Id.)  According to Plaintiff, NJDHSS never responded to his complaint.  (Id. at ¶ 11.)

**B.   Procedural History**

In addition to the complaints he filed with these governmental agencies, Plaintiff has pursued his concerns about the casino emissions in state and federal court.  On March 31, 2005, Plaintiff filed a lawsuit in the Superior Court of New Jersey, Atlantic County, against the Taj Mahal Hotel and Casino; the Showboat Hotel and Casino; Showboat's Maintenance Supervisor, Lou Defeo; Conectiv Thermal Systems[1]; Conectiv's Vice President,

---

[1] Conectiv is a company that performs operational and maintenance services at the Taj Mahal.  (Showboat Br. Ex. 2.)

6

Thomas W. Herzog; and Conectiv's Plant Manager, Ken Lehberger.
(Showboat Br. Ex. 2.)  Plaintiff's complaint in his state court
action alleged that the defendants were liable for "gross
negligence, willful misconduct and intentional infliction of
emotional distress," as well as for violating the "New Jersey
Public Nuisance Laws" and the "Air Pollution Control Acts and
Administrative Rules."  (Id.) (emphasis and capitalization
omitted).

        In two orders dated August 18, 2006, and October 6, 2006,
the Honorable William E. Nugent granted the defendants' motions
for summary judgment and dismissed Plaintiff's case with
prejudice.  (Murphy Aff. Ex. 10, O'Hara Aff. Ex. D.)  In his oral
opinion granting Showboat's motion for summary judgment, Judge
Nugent found that Plaintiff had failed to present a triable issue
of fact, noting that Plaintiff had failed "to do the [air
quality] testing that the Court, not only permitted, but at least
with respect to his apartment directed that he do" in order to
establish the existence of the emissions and the contaminants
that they allegedly contained.  (Murphy Aff. Ex. 10 at 47.)
Judge Nugent further explained that mere "speculation about
whether there are emissions coming from the buildings that have
contaminants in them, speculation about whether those
contaminants, if they even exist, are finding their way into Mr.
Schneider's residence" failed raise a disputed issue of fact

7

sufficient to survive the defendants' motions for summary judgment. (Id. at 46.) Judge Nugent granted the defendants' motions for summary judgment and dismissed Mr. Schneider's claims against them.

On July 14, 2006, Plaintiff commenced the present action. In his original complaint, Plaintiff asserted claims premised on New Jersey tort law, alleging dereliction of duty (Count One), wrongful acts and omissions (Count Two), intentional infliction of emotional distress (Count Three) and declaratory judgment (Count Four). (Compl. ¶¶ 9-16.) Plaintiff originally named twenty-one governmental defendants – the United States of America, the EPA, and Kenneth Eng (the "Federal Defendants"); the State of New Jersey, NJDEP, various NJDEP employees, NJDHSS, and NJDHSS Commissioner Dr. Fred Jacobs (the "State Defendants"); the Atlantic County Government, the Atlantic County Health Department, and various Atlantic County Health Department employees (the "County Defendants"); and the City of Atlantic City, the Atlantic City Health Department, and various Atlantic City Health Department employees (the "City Defendants").

The State and City Defendants subsequently moved to dismiss the case, arguing that the Court lacked jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff and numerous defendants were citizens of New Jersey. On February 27, 2007, the Honorable Noel L. Hillman, United States District Judge, to whom this case was

initially assigned[2], issued an Opinion [Docket Item 35] permitting Plaintiff to amend his complaint so as to add new claims premised upon federal law and denying the defendants' motion to dismiss.  On March 13, 2007, Plaintiff filed an amended complaint [Docket Item 37] that added a new claim, which alleged that the defendants "violated plaintiff's Civil Rights under the U.S. Constitution [and] Federal Law," citing "[42 U.S.C. § 1983], Conspiracy to Interfere with Civil Rights, Title VII, Age Discrimination, Title VIII, Older Americans Act, Title 33, Hazardous Substance Liability, Title V, Fiduciary Responsibilities, Liabilities & Penalties."  (Am. Compl. ¶ 17.) In addition to adding this new claim, the amended complaint named nineteen additional defendants – the six defendants that Plaintiff had named in his then-dismissed state court claim (the "State Court Defendants")[3], as well as BPLA and various BPLA officers (the "BPLA Defendants").  The State Court Defendants, the BPLA Defendants, and the City and County Defendants subsequently filed the motions to dismiss that are presently before the Court.

---

[2]  On March 16, 2007, by order of Chief Judge Garrett E. Brown, the case was reassigned from Judge Hillman to the undersigned [Docket Item 38].

[3]  The State Court Defendants are: the Taj Mahal Hotel and Casino; the Showboat Hotel and Casino; Showboat's Maintenance Supervisor, Lou Defeo; Conectiv Thermal Systems; Conectiv's Vice President, Thomas W. Herzog; and Conectiv's Plant Manager, Ken Lehberger.

## II.  DISCUSSION

### A.   Standard for F. R. Civ. P. 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  Bright v. Westmoreland County, 380 F.3d 729, 735 (3d Cir. 2004).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  Id.; see also Scheuer, 416 U.S. at 236.

The question before the court is not whether plaintiffs will ultimately prevail; rather, it is whether they can prove any set of facts in support of their claims that would entitle them to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  Additionally, a "pro se complaint, however inartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers."  Montgomery v. Pinchak, 294

F.3d 492, 500 (3d Cir. 2002) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

**B.   <u>Res</u> <u>Judicata</u> and the Entire Controversy Doctrine**

As the Court of Appeals for the Third Circuit has noted, the doctrine of "<u>res</u> <u>judicata</u> protects litigants from the burden of relitigating an identical issue with the same party or his privy and promotes judicial economy by preventing needless litigation." <u>Post v. Hartford Ins. Co.</u>, 501 F.3d 154, 169 (3d Cir. 2007) (quoting <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 327 (1979)) (internal quotations omitted).  In applying the doctrine of <u>res</u> <u>judicata</u>, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  <u>Walker v. Horn</u>, 385 F.3d 321, 337 (3d Cir. 2004) (quoting <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984)); <u>see also</u> <u>Paramount Aviation Corp. v. Agusta</u>, 178 F.3d 132, 135 (3d Cir. 1999) ("federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court").

The New Jersey Supreme Court has recently noted that New Jersey's "entire controversy doctrine is essentially <u>res</u> <u>judicata</u> by another name," and that the purpose of both doctrines is to require litigants "to bring all possible claims in one proceeding."  <u>McNeil v. Legislative Apportionment Com'n of State</u>,

11

177 N.J. 364, 395 (2003) (citation omitted).  Under New Jersey

law, claim preclusion will prevent a litigant from relitigating

disputes that had been resolved in an earlier proceeding if three

requirements are met:

> (1) the judgment in the prior action must be valid,
> final, and on the merits; (2) the parties in the later
> action must be identical to or in privity with those in
> the prior action; and (3) the claim in the later action
> must grow out of the same transaction or occurrence as
> the claim in the earlier one.

Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412

(1991) (citations omitted).  With regard to the "transaction or

occurrence" prong, the Court elaborated, noting that "[c]laim

preclusion applies not only to matters actually determined in an

earlier action, but to all relevant matters that could have been

so determined."  Id.

### 1.   State Court Defendants

The State Court Defendants have moved to dismiss Plaintiff's

case against them on the ground that Plaintiff's now-terminated

state court action against them was a final judgment on the

merits that bars relitigating the same issues in this case.[4]  The

State Court Defendants argue that the first two prongs of the

---

[4]  The State Court Defendants submitted separate motions to
dismiss – Showboat moved on behalf of itself and Mr. Defeo
[Docket Item 66]; Conectiv moved on behalf of itself, Mr. Herzog,
and Mr. Lehberger [Docket Item 67]; and the Taj Mahal moved on
behalf of itself [Docket Item 68].  Because the issues raised in
these motions are identical, the Court addresses all three
motions collectively.

claim preclusion inquiry are easily satisfied here – Judge
Nugent's August 18, 2006 and October 6, 2006 orders were valid
final judgments on the merits that terminated Mr. Schneider's
claims with prejudice, and the parties to the state court action
were precisely the same parties that now move for dismissal on
res judicata grounds.  As to the final prong, the State Court
Defendants argue that Plaintiff's claims in this lawsuit arise
out of the same set of facts around which the state court action
focused – namely, the allegation that Plaintiff has been injured
as a result of allegedly harmful "white smoky" emissions coming
from the Showboat and Taj Mahal casinos.  In both actions,
Plaintiff's claims sounded in negligence and intentional tort.
According to the State Court Defendants, while Plaintiff has
included dereliction of duty claims directed at various
governmental agencies in this case that were not litigated in
state court, these claims not only relate to the same set of
operative facts as the state court lawsuit, but could easily have
been brought in state court because the governmental
investigations were completed well before Judge Nugent dismissed
Plaintiff's suit.  Likewise, the State Court Defendants argue
that Plaintiff's claims arising under section 1983 are equally
precluded by the termination of his state court suit, as
Plaintiff is merely reformulating his legal theory regarding the

same "transaction or occurrence," rather than litigating a separate matter.

Plaintiff argues that the doctrine of <u>res judicata</u> does not bar his claims against the State Court Defendants because "culpable information was gleaned that plaintiff was not aware of when the original Complaint was filed in State Court," and, by the time this information was discovered, "plaintiff realized a fair hearing of his Complaint in Atlantic County State Superior Court[] was not possible."[5]  (Pl.'s Br. 9, 12.)  Plaintiff concedes that "the underlying facts of this instant action are the same or similar to the State matter," but argues that the precise claims ruled on by Judge Nugent in state court have not been raised in this action.  (<u>Id.</u> at 10.)  According to Plaintiff, "[j]udicial misconduct" perpetrated over the course of his state court litigation indicated to him that "it would be futile to pursue further litigation in that Court, as the outcome was pre-ordained."  (<u>Id.</u> at 13.)  Such misconduct, according to Plaintiff, further justifies his decision to withhold the legal arguments asserted in this suit from his earlier case against the State Court Defendants.

---

[5]  Plaintiff appears to concede that the first two prongs of the <u>res judicata</u> inquiry are satisfied in this case, and focuses his argument on the third factor – the plaintiff's capacity to have litigated the new claims in the earlier case.

The Court agrees with the State Court Defendants that
Plaintiff's claims against them are precluded by the entry of a
final judgment on the merits of his state court case.  The first
prong of the claim preclusion inquiry – that "the judgment in the
prior action [] be valid, final, and on the merits" – is clearly
satisfied in this case.  Watkins, 124 N.J. at 412.  As the Court
noted, supra, Judge Nugent's orders in the state court case
terminated Mr. Schneider's claims with prejudice on account of
Mr. Schneider's failure in that case to raise a genuine issue of
fact that would warrant the court to permit the case to proceed
to trial.  (Murphy Aff. Ex. 10, O'Hara Aff. Ex. D.)  Judge
Nugent's orders stemmed not from the "court's [mere] procedural
inability to consider [Mr. Schneider's] case," but instead
amounted to a "valid and final personal judgment rendered in
favor of the defendant[s]."  Watkins, 124 N.J. at 415-16
(citation omitted).  The state court orders thus were final
judgments on the merits of Plaintiff's claims.

    The second prong of the res judicata analysis, the identity
of the parties in both actions, is likewise satisfied in this
case.  The identity and alignment of the parties to the state
court action are the same in the instant case – Mr. Schneider is
the sole plaintiff in this action as he was in state court, and
all of the defendants sued in state court have been joined in
this lawsuit.  It is immaterial to considerations of res judicata

that Plaintiff has named additional defendants in this case.
Although, as the Court discusses, _infra_, parties to this case
that were not sued in the earlier action cannot argue for
dismissal on claim preclusion grounds unless they are in privity
with the previously sued defendants, _McNeil_, 177 N.J. at 397, the
mere addition of defendants to a second lawsuit does not
undermine the State Court Defendants' arguments for dismissal.
An alternative rule would enable a plaintiff to frustrate the
purpose of the doctrine of _res judicata_ simply by adding new
defendants to each subsequent litigation.  At least as to the
State Court Defendants, therefore, the Court finds that the
second prong of the _res judicata_ inquiry is satisfied in this
case.

Finally, the Court agrees with the State Court Defendants
that Plaintiff's claims in this case "grow out of the same
transaction or occurrence as the claim[s]" litigated in the state
court action.  _Watkins_, 124 N.J. at 412.  First, the underlying
set of facts giving rise to Plaintiff's cause of action in both
cases is identical.  In his state and federal complaints,
Plaintiff alleges that as a result of the defendants' tortious
conduct, he has been exposed to an "off-white moist mist" that
has injured Plaintiff on account of his "vulnerable"
constitution.  (Am. Compl. ¶¶ 9, 16; Murphy Aff. Ex. 5 ¶¶ 17,
50.)  At the heart of both suits are the alleged injuries

16

Plaintiff has suffered as a result of his exposure to the casino emissions, and the allegedly wrongful acts of various defendants that have permitted such exposure to occur.

Plaintiff advanced a variety of legal theories in both actions regarding the illegality of the emissions and the bases of his grounds for relief.  In both cases, Plaintiff alleged causes of action premised upon negligence and intentional infliction of emotional distress.  (Am. Compl. ¶ 15; Murphy Aff. Ex. 5 ¶ 55.)  While in state court Plaintiff argued that the casino emissions violated the "Air Pollution Control Acts," in this action Plaintiff alleges that the defendants violated a plethora of federal laws ranging from the Older Americans Act to "Hazardous Substance Liability."  (Am. Compl. ¶ 17; Murphy Aff. Ex. 5 ¶ 56.)  Plaintiff's reference to new statutory bases for recovery in this action does not serve to create a new "transaction or occurrence" for claim preclusion purposes, because the focus of the claim preclusion inquiry is on the congruence of the factual, rather than the legal, underpinnings of the plaintiff's suits.  See McNeil, 177 N.J. at 395.  As the New Jersey Supreme Court explained, "[i]f, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action.  Otherwise, theories not raised will be precluded in a later action."  Id. (quoting Watkins, 124 N.J. at 413).

The Court does not find Plaintiff's observation that "culpable information was gleaned that plaintiff was not aware of when the original Complaint was filed in State Court" to undermine its finding regarding the identity of the factual bases underlying both the state and federal actions.  (Pl.'s Br. 9.) The "culpable information" to which Plaintiff refers is the alleged inadequacy of the governmental investigations into the casino emissions, most of which were underway prior to the date when Plaintiff filed his complaint in state court and all of which were completed well before Judge Nugent dismissed Plaintiff's case.  (Am. Compl. ¶¶ 9-13.)  To the extent that these allegedly inadequate investigations had any significance to Plaintiff's theories regarding the State Court Defendants' wrongful conduct, Plaintiff was free to present his arguments in his state court action.  See Watkins, 124 N.J. at 412 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.").

Plaintiff's perceptions regarding alleged "[j]udicial misconduct" in his state court proceedings likewise does not provide a basis for relitigating his claims against the State Court Defendants before this Court.  (Pl.'s Br. 13.)  The "misconduct" Plaintiff alleges centers around his dissatisfaction with the management of discovery in the state court case, which

Plaintiff claims hampered his ability to litigate his action in state court.  (Id.)  It is well-settled that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curium).  To the extent that Mr. Schneider perceived that "the outcome was pre-ordained" in his state court proceedings on account of the court's management of discovery-related matters, and that this violated Mr. Schneider's due process rights, the proper recourse for Mr. Schneider would have been to appeal the matter within the New Jersey court system.[6] The plaintiff's dissatisfaction with the manner in which his state court action proceeded does not entitle Plaintiff to withhold legal arguments pertaining to the "transaction or occurrence" at issue in the state court proceeding in the hope that his claims against the State Court Defendants could be relitigated before a different tribunal.  Watkins, 124 N.J. at 412.

The Court finds that in the prior state court proceedings, a final judgment on the merits was rendered regarding the dispute between Plaintiff and the State Court Defendants on the same transaction or occurrence underlying the instant lawsuit.  The

---

[6] According to Plaintiff's submissions to this Court, Mr. Schneider has indeed appealed Judge Nugent's decision to the Appellate Division of the Superior Court of New Jersey.  (Pl. Br. 13.)

Court accordingly holds that the doctrine of <u>res judicata</u> bars Plaintiff's claims against the State Court Defendants in this case, and will grant the State Court Defendants' motions to dismiss.

**2.   BLPA Defendants, County Defendants, and City Defendants**

The BLPA Defendants, County Defendants, and City Defendants have likewise moved the Court to dismiss Plaintiff's claims against them, arguing that principles of <u>res judicata</u> and New Jersey's entire controversy doctrine require the dismissal of Plaintiff's claims.  The Court will deny these motions.  Whatever may be the merits of Plaintiff's claims against these defendants, <u>res judicata</u> and the entire controversy doctrine provide no basis for dismissal.  This is because one of the indispensable requirements for an order of dismissal based on either doctrine is that "the parties in the later action must be identical to or in privity with those in the prior action."  <u>McNeil</u>, 177 N.J. at 395 (citation omitted).  None of the BLPA Defendants, the County Defendants, or the City Defendants were named as parties to Mr. Schneider's state court action.

Moreover, there is nothing in the record to suggest that any of the BLPA Defendants, the County Defendants, or the City Defendants were in privity with any of the State Court Defendants.  "A relationship is usually considered 'close enough' [for privity purposes] only when the party is a virtual

representative of the non-party, or when the non-party actually controls the litigation." Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3rd Cir. 1994); see also State v. Brown, 394 N.J. Super. 492, 500 (N.J. Super. A.D. 2007) ("generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right") (internal quotations and citations omitted).  Nothing in this case suggests such an identification of interests between any of the BLPA Defendants, the County Defendants, or the City Defendants and any of the State Court Defendants.  The State Court Defendants were all self-interested private parties, none of whom had any incentive to account for the interests of the BLPA Defendants, the County Defendants, or the City Defendants when litigating in the earlier action in state court.

The Court therefore finds that neither the BLPA Defendants, the County Defendants, nor the City Defendants were parties to the state court litigation, nor were they in privity with any party to the earlier litigation.  Accordingly, these defendants' motions for dismissal on res judicata and entire controversy doctrine grounds will be denied.

### C.    Showboat's Motion for Injunctive Relief

Finally, the Court addresses Showboat's motion for an injunction imposing "reasonable procedural restraints . . . on Plaintiff before he is allowed to make[] further filings against the Showboat Defendants."  (Showboat Def. Br. 22.)  In support of its motion, Showboat cites a single, unpublished opinion by the Court of Appeals for the Third Circuit upholding the entry of such an injunction against a pair of plaintiffs who "filed no fewer than seven bankruptcy petitions, three appeals or lawsuits in the United States District Court, two appeals to [the Court of Appeals], and numerous state court actions arising in connection with certain of their loans and mortgages."  Tilbury v. Aames Home Loan, 199 Fed. Appx. 122, 123 (3d Cir. 2006) (per curium).  While recognizing that the issuance of such an injunction is an "extreme remedy," the court found that the injunction was appropriately tailored to the unique facts of that case, in which the enjoined parties had "burdened nearly every person even remotely connected to their underlying suit, including several courts and numerous judges."  Id.

The facts of this case do not, at this stage, resemble the uniquely burdensome circumstances at issue in Tilbury.  To date, Showboat has had to defend itself in two lawsuits – one properly brought in state court, and another promptly dismissed at the outset on res judicata grounds.  The Court is not convinced that these circumstances amount to the sort of abusive litigation

tactics that would justify resort to the "extreme remedy" of an injunction.  Id.  Showboat's motion for injunctive relief will, therefore, be denied.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the motions of the State Court Defendants [Docket Items 66-68] to dismiss Plaintiff's claims against them.  The Court will deny the BLPA Defendants', the County Defendants', and the City Defendants' motions to dismiss [Docket Items 56, 63, and 69].  The Court will also deny Showboat's motion for injunctive relief.  The accompanying Order will be entered.


**December 17, 2007**                        **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge

23