[relates to Docket Items 103, 104, 106]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK SCHNEIDER | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 06-3200 (JBS) |
| v. | |
| UNITED STATES OF AMERICA, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Mr. Frederick Schneider
129 S. Virginia Avenue - #1207
Atlantic City, NJ 08401
    Plaintiff pro se

Jeffrey David Light, Esq.
GOLDENBERG, MACKLER, SAYEGH, MINTZ,
PFEFFER, BONCHI & GILL, PC
660 New Road
Suite 1A
Northfield, NJ 08225
    Attorney for Defendants Best of Life Park Apartments et al.

John Charles Hegarty, Esq.
SOLICITORS OFFICE FOR ATLANTIC CITY
City Hall
1301 Bacharach Boulevard
Atlantic City, NJ 08401-3603
    Attorney for Defendants Atlantic City et al.

Anthony Pagano, Esq.
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 Atlantic Avenue
8th Floor
Atlantic City, NJ 08401
    Attorney for Defendants Atlantic County Government et al.

**SIMANDLE,** District Judge:

This matter comes before the Court on the motion for reconsideration [Docket Item 103] submitted by the Best of Life Park Apartment Defendants ("BLPA Defendants") and joined by the City Defendants [Docket Item 104] and the County Defendants[1] [Docket Item 106]. The Defendants' motion relates to this Court's December 17, 2007 Opinion and Order [Docket Items 100 and 101], in which the Court denied Defendants' motion to dismiss. For the reasons set forth below, the Court will deny Defendants' motion for reconsideration.

## I.  BACKGROUND

The facts of this case as they pertain to the defendants' motion for reconsideration are as follows.[2] Plaintiff's Amended Complaint alleges that two casinos located between fifty and two-hundred yards from the Best of Life Park Apartment ("BLPA") complex have been emitting an "off-white moist mist" since he moved into a BLPA unit in April 2003. (Am. Compl. ¶ 9.) Mr. Schneider alleges that this mist has drifted into his apartment and has negatively impacted his health. (Id. at ¶ 16.) Mr. Schneider undertook an extensive range of efforts to address what

---

[1] For purposes of this motion, the Court will refer to the BPLA Defendants, the City Defendants, and the County Defendants collectively as "Defendants."

[2] The facts and procedural history of this action are set forth in greater detail in the Court's December 17, 2007 Opinion [Docket Item 100].

2

he perceived as a threat to his health, contacting various federal and state governmental offices, but alleges that the casinos have continued to release the purportedly harmful emissions.  (Id. at ¶¶ 11-16.)

On March 31, 2005, Plaintiff filed a lawsuit in the Superior Court of New Jersey, Atlantic County, against the Taj Mahal Hotel and Casino; the Showboat Hotel and Casino; Showboat's Maintenance Supervisor, Lou Defeo; Conectiv Thermal Systems[3]; and two Conectiv employees (collectively, the "State Court Defendants").  (Showboat Br. Ex. 2.)  Plaintiff's state court complaint alleged that the defendants were liable for "gross negligence, willful misconduct and intentional infliction of emotional distress," as well as for violating the "New Jersey Public Nuisance Laws" and the "Air Pollution Control Acts and Administrative Rules."  (Id.) (emphasis and capitalization omitted).  None of the BLPA Defendants, the City Defendants, or the County Defendants were named as parties in the state court action.  (Id.)  The Honorable William E. Nugent, who presided over Mr. Schneider's state court lawsuit, ultimately granted the defendants' motions for summary judgment.  (Murphy Aff. Ex. 10, O'Hara Aff. Ex. D.)

On July 14, 2006, Plaintiff commenced this action, asserting claims against numerous defendants, including the City and County Defendants, premised upon New Jersey tort law.  (See generally

---

[3] Conectiv is a company that performs operational and maintenance services at the Taj Mahal.  (Showboat Br. Ex. 2.)

3

Compl.)  On March 13, 2007, Plaintiff filed an Amended Complaint [Docket Item 37], which added a new claim alleging that the defendants "violated plaintiff's Civil Rights under the U.S. Constitution [and] Federal Law," citing "[42 U.S.C. § 1983], Conspiracy to Interfere with Civil Rights, Title VII, Age Discrimination, Title VIII, Older Americans Act, Title 33, Hazardous Substance Liability, Title V, Fiduciary Responsibilities, Liabilities & Penalties."  (Am. Compl. ¶ 1.) The Amended Complaint named nineteen additional defendants – the six defendants that Plaintiff had named in his then-dismissed state court claim and the BLPA Defendants.

The State Court Defendants, the BLPA Defendants, and the City and County Defendants subsequently filed motions to dismiss, arguing that principles of res judicata and New Jersey's entire controversy doctrine precluded Plaintiff from litigating his claims against them.  In its December 17, 2007 Opinion and Order ("Schneider I"), the Court dismissed Plaintiff's claims against the State Court Defendants but denied the BLPA Defendants' and the City and County Defendants' motions.  The Defendants' motion for reconsideration followed, to which the Court now turns.

**II. DISCUSSION**

Local Civil Rule 7.1(i) of the United States District Court, District of New Jersey, governs Defendants' motion for reconsideration.  Rule 7.1(i) requires the moving party to set forth the factual matters or controlling legal authorities it

4

believes the court overlooked when rendering its initial decision.  L. Civ. R. 7.1(i).  Whether to grant a motion for reconsideration is a matter within the Court's discretion, but it should only be granted where such facts or legal authority were indeed presented but overlooked.  See DeLong v. Raymond Int'l Inc., 622 F.2d 1135, 1140 (3d Cir. 1980), overruled on other grounds by Croker v. Boeing Co., 662 F.2d 975 (3d Cir. 1981); Williams v. Sullivan, 818 F. Supp. 92, 93 (D.N.J. 1993).  To prevail on a motion for reconsideration, the movant must show either

> (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court . . . [rendered the judgment in question]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Max's Seafood Café ex rel. Lou-Ann, Inc., v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

The Defendants argue that the Court's decision in Schneider I contained such a "clear error of law," id., because the Court overlooked the holding of the New Jersey Supreme Court in Ditrolio v. Antiles, 142 N.J. 253 (1995), regarding the scope of the entire controversy doctrine.  In Schneider I, the Court determined that Mr. Schneider was not precluded from pursuing his claims against the BLPA Defendants, the City Defendants, and the County Defendants because those defendants were not named as parties in the state court action, nor were they in privity with any party to that action.  Schneider I at 20.  The Court held

5

that the entire controversy doctrine requires litigants "to bring all possible claims in one proceeding," but does not require dismissal of a subsequent lawsuit brought against parties not named in the first action.  Id. at 11 (quoting McNeil v. Legislative Apportionment Com'n of State, 177 N.J. 364, 395 (2003)) (emphasis added).  According to Defendants, this holding is inconsistent with Ditrolio, which found that the entire controversy doctrine extends beyond claim preclusion to "mandate the joinder of all parties with a material interest, one that can affect or be affected by the judicial outcome of a legal controversy."  Ditrolio, 142 N.J. at 267 (citation omitted).

   Defendants' argument that the Court overlooked controlling New Jersey law regarding the scope of the entire controversy doctrine is without merit, and so the Court will deny the motion for reconsideration.  While it has long been the case under New Jersey law that the entire controversy doctrine requires litigants "to bring all possible claims in one proceeding," McNeil, 177 N.J. at 395, the question of whether the doctrine extends to mandatory party joinder as well has undergone considerable evolution over the last two decades.  "Originally, New Jersey courts understood that the doctrine was limited to claim preclusion and did not require joinder of nonparties." Center For Professional Advancement v. Mazzie, 347 F. Supp. 2d 150, 155 (D.N.J. 2004) (citing Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550 (1981)).  Beginning in 1984 in Crispin v.

Volkswagenwerk, A.G., 96 N.J. 336 (1984), and more explicitly in Cogdell v. Hosp. Ctr. at Orange, the New Jersey Supreme Court held that "the doctrine encompasses the mandatory joinder of parties," 116 N.J. 7, 26 (1989).  The "apex – or nadir – of mandatory party joinder under the entire controversy doctrine" occurred in 1995, when the New Jersey Supreme Court issued no fewer than four decisions cementing the rule that the doctrine extended to compulsory party joinder.  Howard M. Erichson, Of Horror Stories and Happy Endings: The Rise and Fall of Preclusion-Based Compulsory Party Joinder Under the New Jersey Entire Controversy Doctrine, 9 Seton Hall Const. L.J. 757, 762 (1999).  Ditrolio v. Antiles, the case Defendants invoke as controlling authority that the Court overlooked in Schneider I, was among this quartet of 1995 decisions.

    Had the entire controversy doctrine ceased evolving in 1995, Defendants' argument that Mr. Schneider is precluded from bringing this action against them might have merit.  In 1998, however, "[f]acing mounting criticism for the untenable outcomes often generated in post-Cogdell decisions, the New Jersey Supreme Court . . . authorized the elimination of mandatory party joinder under the entire controversy doctrine."  Mazzie, 347 F. Supp. 2d at 155-56 (citing K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 69-70, (2002)); see also Hobart Bros. Co. v. National Union Fire Ins. Co., 354 N.J. Super. 229, 242 (App. Div. 2002); Mitchell v. Charles P. Procini, D.D.S., P.A., 331 N.J.

Super. 445, 453-54 (App. Div. 2000). The New Jersey Civil Practice Rules were amended accordingly, and New Jersey Civil Practice Rule 4:30A now provides in relevant part that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . ." Under the amended Rule, "[t]he court may . . . dismiss a successive suit against an unnamed transactionally interested person <u>only</u> if the failure to name that person was inexcusable and that person's ability to defend the successive action is <u>substantially prejudiced</u> by not having been named."[4] Sylvia B.

---

[4] Under New Jersey Civil Practice Rule 4:5-1(b)(2),

> the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the non-complying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

In the absence of substantial prejudice, suitable sanctions for noncompliance with Rule 4:5-1(b)(2) include "monetary sanctions and/or counsel fees later incurred that would have been avoidable by disclosure." Sylvia B. Pressler, Current N.J. Court Rules 4:5-1 cmt. 2.2.1 (2008). Because the defendants have not moved for the imposition of monetary sanctions or counsel fees, and have made no showing that any of their expenses would have been avoidable had Mr. Schneider made an appropriate Rule 4:5-1 disclosure in his state court action, the Court declines to address the issue of monetary sanctions here.

Pressler, Current N.J. Court Rules 4:30A cmt. 1 (2008) (emphasis added).  Substantial prejudice, in turn,

> means that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action.  Such harm might come about through loss of witnesses, loss of evidence, fading memories, and the like, although delay alone does not serve to create substantial prejudice.

Mazzie, 347 F. Supp. 2d at 156 (internal quotations and citations omitted).

The defendants have made no showing here that they have been prejudiced as a result of having to defend against Mr. Schneider's claims in this action rather than in his prior state court lawsuit, nor did they make any such showing in their motions in Schneider I.  They argue simply that the Court overlooked binding law in rendering its decision in Schneider I.  As the preceding discussion demonstrates, the Court's prior decision contained no such oversight – its statement that the entire controversy doctrine requires litigants "to bring all possible claims in one proceeding" accurately describes the scope of the doctrine since the 1998 amendments to the New Jersey Civil Practice Rules took effect.  Schneider I at 11 (quoting McNeil, 177 N.J. at 395).  Defendants' reliance on the abrogated authority of Ditrolio is misplaced, and fails to establish "the need to correct a clear error of law."  Max's Seafood Café, 176

9

F.3d at 677.  Defendants' motion for reconsideration will accordingly be denied.[5]

### III. CONCLUSION

For the reasons discussed above, the Court will deny Defendants' motion for reconsideration.[6]  The accompanying Order will be entered.

**February 13, 2008**           **s/ Jerome B. Simandle**
Date                       JEROME B. SIMANDLE
                           United States District Judge

---

[5]  In their motion joining the BLPA Defendants' motion for reconsideration, the County Defendants suggest that because they did not have "jurisdictional authority" to act upon Plaintiff's claims, his claims against them should be dismissed.  (County Defs.' Br. 2.)  The County Defendants did not raise this argument in the motion to dismiss that they now ask the Court to reconsider.  Because only issues that "had been presented to the court but overlooked in the court's decision" are properly the subject of a motion for reconsideration, Williams, 818 F. Supp. at 93, the Court will not address this argument.

[6]  This denial of reconsideration does not address the merits, if any, of Mr. Schneider's various claims.  Any party is free to move for dismissal for failure to state a claim or alternatively, for summary judgment.  Further, this Opinion addresses only the New Jersey entire controversy doctrine, and it does not address the separate issue of whether Mr. Schneider is collaterally estopped from relitigating factual matters that were necessarily adjudicated against him in the Superior Court's judgment.