THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FREDERICK SCHNEIDER | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 06-3200 (JBS) |
| v. | : | |
| | : | **OPINION** |
| UNITED STATES OF AMERICA, <u>et al.</u>, | : | |
| Defendants. | : | |

APPEARANCES:

Mr. Frederick Schneider
P.O. Box 8016
Atlantic City, NJ 08404
     Plaintiff <u>pro</u> <u>se</u>

CHRISTOPHER J. CHRISTIE
United States Attorney
By:  Anthony J. Labruna, Jr.
     Assistant United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102

Kevin P. Auerbacher, Esq.
OFFICE OF THE NJ ATTORNEY GENERAL
Richard J. Hughes Justice Complex
PO Box 093
Trenton, NJ 08625

**SIMANDLE**, District Judge:

     Plaintiff Frederick Schneider, <u>pro</u> <u>se</u>, filed this action against a long list of federal, state, county, city, and private defendants, asserting claims premised upon New Jersey tort law and multiple federal constitutional and statutory laws. Presently before the Court are the State and Federal Defendants'

motions to dismiss [Docket Items 79 and 91] and Plaintiff's
motion to file a second amended complaint [Docket Item 99].  For
the reasons explained below, the State and Federal Defendants'
motions to dismiss will be granted.  In addition, the Court finds
that while the County, City, and Private Defendants have not
moved to dismiss Plaintiff's claims on the same grounds raised by
the State and Federal Defendants, the reasons underlying the
Court's decision to grant the State and Federal Defendants'
motions warrant the dismissal of Plaintiff's claims against the
nonmoving defendants as well.  Finally, as the Court explains
below, Plaintiff's motion to file a second amended complaint will
be denied.

I.    **BACKGROUND**

   A.   **Facts**

      At the time the events underlying this litigation occurred,
Plaintiff lived in an apartment unit at the Best of Life Park
Apartments ("BLPA") complex in Atlantic City, New Jersey.  (Am.
Comp. ¶ 9.)  The BLPA complex is located within two-hundred yards
of two Atlantic City casinos – the Trump Taj Mahal Casino ("Taj
Mahal") and the Atlantic City Showboat Casino ("Showboat").
(Id.)  According to Plaintiff, from the date he moved into the
BLPA complex in April 2003, he observed the Taj Mahal and
Showboat casinos emitting "smoky emissions" or an "off-white
moist mist."  (Id.)  Plaintiff's Complaint alleges that this
substance has drifted from the casinos into his living unit.

(Id.)  According to Plaintiff, his exposure to this mist has negatively impacted his health.  (Id.)  Specifically, Plaintiff states that since March 2004, he has suffered from "insufficient pulmonary function" and that he has been diagnosed with progressive pulmonary failure.  (Id. at ¶ 16.)

Plaintiff has undertaken extensive steps in order to convince various parties to address his concerns over the mist.  After unsuccessfully complaining to the casinos themselves, Plaintiff brought his concerns to the attention of multiple federal, state, county, and city agencies.  (Id. at ¶¶ 9-13.)  On February 11, 2005, Plaintiff filed a complaint about the casino emissions with Kenneth Eng, an employee of the United States Environmental Protection Agency ("EPA").  (Id. at ¶ 9.)  As Plaintiff alleges in his Amended Complaint, on May 18, 2005, Mr. Eng dispatched two EPA employees to investigate the emissions alleged in Plaintiff's complaint.  (Id.)  The investigators conducted what Plaintiff claims was an inadequate investigation and issued "an inaccurate [and] false report" finding that the casino emissions did not pose a health risk to Plaintiff and other BLPA tenants.  (Id.)  On June 9, 2005, Mr. Eng wrote Plaintiff a letter in which Mr. Eng advised Plaintiff that the EPA would not order the Taj Mahal and the Showboat casinos to cease their emissions because Plaintiff's complaint "had no merit."  (Id.)

On February 11, 2005, the same day Plaintiff contacted the EPA, he filed a complaint with the New Jersey Department of Environmental Protection ("NJDEP") to voice his concerns about the casino emissions.  (Id. at ¶ 10.)  NJDEP sent Tim P. Davis to investigate Plaintiff's allegations.  (Id.)  Mr. Davis made three visits to the casinos and BLPA between February and May, 2005.  (Id.)  While Mr. Davis did not observe any smoke during any of his investigations, he "was able to observe a steam plume emanating from the cooling tower" on one of the casinos.  (Id.)  Like the EPA, NJDEP concluded that the casinos did not pose a health risk to Plaintiff, and did not take any further action in response to Plaintiff's complaint.  (Id.)

Plaintiff also filed complaints about the casino emissions with the Atlantic County and Atlantic City Health Departments and the New Jersey Department of Health and Senior Services ("NJDHSS").  (Id. at ¶¶ 12-13.)  On February 23, 2005, Plaintiff was informed by the Atlantic County Health Department that "the Atlantic City Health Department provides environmental health services within the jurisdiction of Atlantic City."  (Id. at ¶ 12.)  The Atlantic City Health Department sent its Principal Sanitary Inspector, Martin J. Connie, to investigate the emissions.  (Id. at ¶ 13.)  Plaintiff subsequently received a letter from Mr. Connie, dated November 2, 2005, informing him that the emissions did not present a health risk.  (Id.)

According to Plaintiff, NJDHSS never responded to his complaint. (Id. at ¶ 11.)

**B.    Procedural History**

Before filing suit in this action, Plaintiff brought a lawsuit in the Superior Court of New Jersey, Atlantic County against the Taj Mahal, the Showboat, and various parties associated with the two casinos, alleging multiple violations of New Jersey common law and various New Jersey statutes.  These defendants' motions for summary judgment were granted and the state court action was ultimately dismissed.

On July 14, 2006, Plaintiff filed the instant action [Docket Item 1].  In his original Complaint, Plaintiff asserted claims premised on New Jersey tort law, alleging dereliction of duty (Count One), wrongful acts and omissions (Count Two), intentional infliction of emotional distress (Count Three) and declaratory judgment (Count Four).  (Compl. ¶¶ 9-16.)  Plaintiff originally named twenty-one governmental defendants – the United States of America, the EPA, and Kenneth Eng (the "Federal Defendants"); the State of New Jersey, NJDEP, various NJDEP employees, NJDHSS, and NJDHSS Commissioner Dr. Fred Jacobs (the "State Defendants"); the Atlantic County Government, the Atlantic County Health Department, and various Atlantic County Health Department employees (the "County Defendants"); and the City of Atlantic City, the Atlantic City Health Department, and various Atlantic City Health Department employees (the "City Defendants").

After the State and City Defendants moved to dismiss for lack of subject matter jurisdiction, the Court permitted Plaintiff to amend his Complaint [Docket Item 37] to assert a claim premised upon federal law.  The new claim alleges that the defendants "violated plaintiff's Civil Rights under the U.S. Constitution [and] Federal Law," citing "[42 U.S.C. § 1983], Conspiracy to Interfere with Civil Rights, Title VII, Age Discrimination, Title VIII, Older Americans Act, Title 33, Hazardous Substance Liability, Title V, Fiduciary Responsibilities, Liabilities & Penalties."[1]  (Am. Compl. ¶ 17.) The Federal and State Defendants subsequently moved to dismiss.

On August 15, 2007, Plaintiff filed another Complaint with this Court, naming as defendants the BLPA Defendants named in this suit, additional individuals associated with the BLPA, the United States, the Department of Housing and Urban Development ("HUD"), and various HUD employees.  See Schneider v. United States, et al., Civil Action No. 07-3887 (JBS) ("Schneider II"), dkt. item 1.  On November 20, 2007, the Court wrote Plaintiff a letter informing him that the Court was unable to make its

---

[1]  The Amended Complaint also named nineteen additional defendants – the six defendants that Plaintiff had named in his then-dismissed state court claim (the "State Court Defendants"), as well as BLPA and various BLPA officers (the "BLPA Defendants").  The State Court Defendants, BLPA Defendants, City Defendants, and County Defendants subsequently moved to dismiss based on principles of res judicata and New Jersey's entire controversy doctrine, and in its December 17, 2007 Opinion and Order, the Court granted the State Court Defendants' motions and denied the other parties' motions [Docket Items 100 and 101].

determination regarding whether to grant Plaintiff's request to
proceed in forma pauperis under 28 U.S.C. § 1915(e)(2)(B) because
Plaintiff's Complaint was unclear.  Schneider II, dkt. item 2.
In its letter, the Court directed Plaintiff as follows:

> I ask that you amend your Complaint within fifteen (15)
> days of the entry of this letter order and clarify what
> happened to you, who inflicted what injuries on you, and
> what relief you are seeking.  It is unclear to me what
> each Defendant allegedly did to you and how you were
> harmed by that conduct.

Id.  In addition, the Court informed Plaintiff that if his actual
intent was to amend his Complaint in his original action, he
should file an appropriate motion and terminate the second case.
Id.  Plaintiff subsequently filed a notice of dismissal in
Schneider II and filed the motion to file a second amended
complaint presently before the Court [Docket Item 99].

## II.  DISCUSSION

### A.   Standard for F. R. Civ. P. 12(b)(6) Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief may be granted, the Court must "'accept
all factual allegations as true, construe the complaint in the
light most favorable to the plaintiff, and determine whether,
under any reasonable reading of the complaint, the plaintiff may
be entitled to relief.'"  Phillips v. County of Allegheny, ___
F.3d ___ , No. 06-2869, slip op. at 15 (3d Cir. Feb. 5, 2008)
(quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d
Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

Phillips, slip op. at 17.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, ____ U.S. ____ , 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1964-1965 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  [Twombly, 127 S. Ct. at 1965 n.3.]  This "does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.  Id.

Phillips, slip op. at 17.  Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint are taken into consideration.  Chester County

Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).

The Twombly case clarified the standard for reviewing the sufficiency of a pleading under Rule 8, F. R. Civ. P., when adjudicated in a motion to dismiss for failure to state a claim upon which relief may be granted, filed under Rule 12(b)(6), F. R. Civ. P.  The factual allegations must be sufficient to "raise a right to relief above a speculative level," Phillips, slip op. at 7.  Although the Twombly/Phillips standard demands slightly more of the pleading than the superseded rubric of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), overruled by Twombly, 127 S. Ct. at 1969, the Supreme Court has also held that Twombly does not change the traditional leniency with which pro se pleadings will be reviewed for sufficiency under Rule 12(b)(6).  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

Thus, Mr. Schneider's pro se pleading is also reviewed with liberality, as required by the well-settled doctrines of Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Haines v. Kerner, 404 U.S. 519, 520 (1972).  With this in mind, the Court examines the Amended Complaint.

**B.   Plaintiff's Federal Law Claims**

Both the Federal and State Defendants have moved to dismiss Plaintiff's Amended Complaint in its entirety.  The Court will address each of the Defendants' arguments regarding Plaintiff's claims based on New Jersey tort law in turn below.  At the

outset, however, the Court addresses the defendants' motions to dismiss Count Four of Plaintiff's Amended Complaint, which alleges "Constitutional Violations & Violations of Law - Civil Rights." (Am. Compl. ¶ 17.)

When Plaintiff originally filed his Complaint in this case, he initially asserted claims based only on New Jersey tort law. (Compl. ¶¶ 9-16.) After some of the defendants moved to dismiss for lack of subject matter jurisdiction, Plaintiff was permitted to file an Amended Complaint purporting to invoke federal question jurisdiction by asserting a claim based on alleged violations of federal statutory and constitutional law. (Am. Compl. ¶ 17.) The claim premised upon violations of federal law states that

> [t]he alleged bad acts by all [defendants], whether directly or indirectly, are vicariously liable for perpetrating Civil Rights violations against Plaintiff Frederick Schneider. These bad acts by all [defendants], breached & violated plaintiff's Civil Rights under the U.S. Constitution & Federal Law, To wit; 42 USC 1983, et als, Conspiracy to Interfere with Civil Rights, Title VII, Age Discrimination, Title VIII, Older Americans Act, Title 33, Hazardous Substance Liability, Title V, Fiduciary Responsibilities, Liabilities & Penalties.

(Id.) Plaintiff does not allege any new facts in the Amended Complaint to explain how the defendants' allegedly tortious conduct also violated this multitude of federal laws.

The Federal and State Defendants argue that this compilation of alleged violations of federal law fails to state a claim for which relief can be granted and should be dismissed. The Federal Defendants argue in effect that the list of federal laws in the

Amended Complaint fails to give them sufficient notice of
Plaintiff's claims, reasoning that "it is impossible to see how
Plaintiff's mere dissatisfaction with the outcome of a[n]
environmental investigation can give rise to complaints of
discrimination [or] any of the other myriad alleged bases that
Plaintiff puts into this briefly stated count."  (Fed. Defs.' Br.
15.)  The State Defendants likewise argue that the Amended
Complaint lacks sufficient specificity to put them on notice as
to Plaintiff's federal claims.  Nonetheless, in light of
Plaintiff's pro se status, the State Defendants attempt to
discern the nature of his federal claims in order to explain why
each statute fails to provide a basis for relief; the State
Defendants surmise, for example, that Plaintiff's invocation of
"Title V" refers to Title V of the Rehabilitation Act, 29 U.S.C.
§ 794, and that Plaintiff's reference to "Title 33, Hazardous
Substance Liability" is meant to refer to Title 33 of the
Comprehensive Environmental Response, Compensation and Liability
Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq.

Even affording Plaintiff the benefit of the "liberal
construction" given to pro se pleadings, Stevenson v. Carroll,
495 F.3d 62, 71 (3d Cir. 2007), the Court agrees with Defendants
that the recitation of federal laws in Count Four of the Amended
Complaint fails "to give the defendant[s] fair notice" of what
Plaintiff's federal claims are, which requires that the claims in
Count Four be dismissed.  Twombly, 127 S. Ct. at 1964.  It is now

well-settled that a civil rights plaintiff is not held to "a
heightened pleading standard – more stringent than the usual
pleading requirements of Rule 8(a)." Leatherman v. Tarrant
County Narcotics Intelligence and Coordination Unit, 507 U.S.
163, 164 (1993). However, as the Court explained, supra, the
obligation of a plaintiff – including a civil rights plaintiff –
"to provide the 'grounds' of his 'entitle[ment] to relief'
requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."
Twombly, 127 S. Ct. at 1964-65 (noting also that a plaintiff must
allege facts that "raise a right to relief above the speculative
level"); see also Evancho v. Fisher, 423 F.3d 347, 354-55 (3d
Cir. 2005) (dismissal warranted where complaint contained
"conclusory, boilerplate language insufficient to show that [the
plaintiff] is or may be entitled to relief"). Plaintiff does not
even take this insufficient step of reciting the elements of the
causes of action he asserts, but instead leaves it to the
defendants and the Court to guess at how, for example, the facts
he has alleged show that the defendants have violated "Title V,
Fiduciary Responsibilities, Liabilities & Penalties." (Am.
Compl. ¶ 17.) Just as a plaintiff's "formulaic recitation of the
elements of a cause of action" is insufficient to satisfy Rule
8(a)'s liberal pleading requirements, Twombly, 127 S. Ct. at
1964, the recitation of a laundry list of statutes with what at
best can be described as having an indistinct tie to the facts

alleged in the Amended Complaint does not constitute "a short and plain statement of the claim showing that the pleader is entitled to relief," which the Federal Rules of Civil Procedure require that even pro se litigants' pleadings contain.  F. R. Civ. P. 8(a)(2).

To the extent that the Court can discern from Count Four which federal laws Plaintiff claims that the defendants violated, it agrees with the State Defendants that the facts alleged in the Amended Complaint are plainly insufficient to support the claims asserted.  Plaintiff argues that Defendants' conduct violated Title VII, but alleges no facts indicating that he was an employee of any defendant.  See 42 U.S.C. § 2000e-2 (specifying the "unlawful employment practice[s]" prohibited by Title VII).  Similarly, Plaintiff alleges constitutional violations and "age discrimination" – which in his Brief in opposition to the Federal Defendants' motion he appears to argue is an Equal Protection claim – but alleges no facts suggesting that he has been "treated differently from similarly situated individuals in an unprotected class."  Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002).

Plaintiff also alleges that Defendants violated his rights under the Older Americans Act, citing the "Congressional list of objectives" found at 42 U.S.C. § 3001 as the basis of his suit. (Pl.'s Opp'n Br. 7.)  While few courts appear to have faced a claim from a plaintiff asserting a private cause of action based

on the Older Americans Act, the Court knows of no case holding that such a claim is cognizable, and all of the decisions the Court is aware of are to the contrary.  See, e.g., City of Chicago v. Lindley, 66 F.3d 819, 827 (7th Cir. 1995); McCarty v. Grguric, No. 06-1444, 2007 WL 4335504, *3 (M.D. Fl. Dec. 7, 2007) (holding that "[t]he objectives listed in Section 3001 serve as guidelines for [certain] federally sponsored programs . . . Therefore, this Act does not create any private rights for elderly persons and may not serve as the legal basis for a cause of action"); Palmer v. Ticcione, 433 F. Supp. 653, 655 (E.D.N.Y. 1977), aff'd 576 F.2d 459 (2d Cir. 1978).  Plaintiff has not articulated any basis for the Court to adopt a contrary holding in this case.

The Court finds an absence of factual allegations showing that Plaintiff is entitled to relief under any of the of the federal laws he lists in Count Four.  The Court is simply unable to decipher many of the claims under the federal laws Plaintiff purports to invoke.  Based on this lack of clarity and the patent deficiencies in those claims that are comprehensible, the Court will grant the Federal and State Defendants' motions to dismiss Count Four of Plaintiff's Amended Complaint.

Moreover, although the remaining defendants have not moved for dismissal on the same grounds raised by the Federal and State Defendants, the Court will dismiss the claims contained in Count Four as to the nonmoving defendants as well.  See Bryson v. Brand

Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (holding that
"for a court to grant judgment on the pleadings, sua sponte, is
not error.  The district court may on its own initiative enter an
order dismissing the action provided that the complaint affords a
sufficient basis for the court's action."); Bowers v. National
Collegiate Athletic Ass'n, 9 F. Supp. 2d 460, 497-98 (D.N.J.
1998) ("The Court may, sua sponte, dismiss a claim as to
non-moving defendants where the inadequacy of the claim is
clear.").  There is no basis for the Court to assume that the
undifferentiated list of statutes contained in Count Four of the
Amended Complaint gives the nonmoving defendants more effective
notice of Plaintiff's claims than it provided to the Federal and
State Defendants.  See Twombly, 127 S. Ct. at 1964.  Likewise,
the patent insufficiency of Plaintiff's decipherable federal
claims – those purporting to invoke the Equal Protection Clause,
Title VII, and the Older Americans Act – is equally evident in
the case of the nonmoving defendants as it is for the Federal and
State Defendants.  Nothing in the pleadings suggests that any of
the nonmoving defendants were in an employment relationship with
Plaintiff, making his Title VII claim equally unsustainable
against those defendants as against the Federal and State
Defendants.  See 42 U.S.C. § 2000e-2.  Similarly, the pleadings
do not indicate that any of the nonmoving defendants "treated
[Plaintiff] differently from similarly situated individuals in an
unprotected class" so as to state a cognizable Equal Protection

claim.  Bradley, 299 F.3d at 206.  Indeed, the majority of the
nonmoving defendants are private parties, not governmental
entities, making Mr. Schneider's constitutional claims
particularly unsustainable.  And, of course, since, as explained
supra, the Older Americans Act does not create a private cause of
action, Plaintiff's allegations purporting to invoke that Act do
not state a claim against the nonmoving defendants any more than
they state a claim against the Federal or State Defendants.

Accordingly, the Court will grant the Federal and State
Defendants' motions to dismiss Count Four of Plaintiff's Amended
Complaint, and will dismiss the claims asserted in Count Four as
to the nonmoving defendants as well.  Count Four, in its
entirety, is insufficient to state a cognizable claim against any
person or entity named therein.

## C.  Remaining Claims Against Federal Defendants

The Federal Defendants argue that they are entitled to the
dismissal of the remainder of Plaintiff's claims.  First, with
regard to the individually named federal defendant, Kenneth Eng,
they argue that proper service was never effected on Mr. Eng in
his individual capacity, requiring that Plaintiff's claims
against Mr. Eng in his individual capacity be dismissed.[2]  With
regard to the remaining Federal Defendants, they argue that
Plaintiff's tort claims fail because under the Federal Tort

---

[2]  Because Mr. Eng was not properly served, counsel for the
Federal Defendants has informed the Court that it does not
represent Mr. Eng in his personal capacity.

Claims Act ("FTCA"), the United States' waiver of sovereign immunity only extends to breaches of duty "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Because a government official's alleged failure to carry out a statutorily imposed duty is thus not within the scope of section 1346(b)'s waiver of sovereign immunity, the Federal Defendants argue, Plaintiff's tort claims must be dismissed.

The Court will grant the Federal Defendants' motion to dismiss the remainder of Plaintiff's claims.  First, the Court agrees with the Federal Defendants that Mr. Eng was not properly served in his individual capacity and, to the extent that Plaintiff asserts claims against Mr. Eng individually, those claims will be dismissed under F. R. Civ. P. 12(b)(5).  Under the Federal Rules of Civil Procedure, to sue an employee of the federal government in his individual capacity, "a party must serve the United States and also serve the officer or employee under Rule 4(e) . . ."[3]  F. R. Civ. P. 4(i)(3).  Rule 4(e) provides that an individual may be served by in-person delivery, by delivery to an appropriate person who resides at the individual's dwelling, by delivery to an agent legally authorized

---

[3]  Rule 4(i)(3) also permits service upon the employee under Rule 4(f) or (g), which deal with service in foreign countries and service upon incompetents, neither of which is applicable here.

to receive service of process, or by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." F. R. Civ. P. 4(e).

Plaintiff attempted to effect service upon Mr. Eng by delivering his Complaint and Amended Complaint to the EPA office in New York City [Docket Item 22]. Rule 4(e) does not recognize as proper service the delivery of the summons to a third party at the individual's place of business. F. R. Civ. P. 4(e). Moreover, Plaintiff's attempt to serve process upon Mr. Eng was not sufficient under New Jersey or New York law – New Jersey law contains no provision for service by delivery of the summons to an individual's place of business, see N.J. Ct. R. 4:4-4, and under New York law, delivery of the summons to an individual's place of business is only sufficient for service of process if the serving party also mails the summons to the individual's residence or business within twenty days of delivery, see N.Y. CPLR § 308(2), which Plaintiff did not do. Accordingly, because Plaintiff did not effect service of process upon Mr. Eng in his individual capacity, his individual-capacity claims against Mr. Eng will be dismissed.

The Court also agrees with the Federal Defendants that it lacks jurisdiction over Plaintiff's tort claims for money damages against the United States, the EPA, and Mr. Eng in his official capacity. "Under settled principles of sovereign immunity, the

United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Dalm, 494 U.S. 596, 608 (1990) (internal quotations and citations omitted).  The EPA, as an agency of the United States, is likewise immune from suit in the absence of such consent.[4]  In re University Medical Center, 973 F.2d 1065, 1085 (3d Cir. 1992).  In enacting the FTCA, Congress waived the government's sovereign immunity with respect to certain claims for money damages against the United States for tortious acts committed by federal employees.  Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 284 (3d Cir. 1995).  Under the FTCA, United States district courts have jurisdiction over

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (emphasis added).  As the emphasized language in the preceding passage makes clear, "plaintiffs may not base their claims under the Federal Tort Claims Act on alleged breaches of a duty arising solely out of federal law when there

---

[4]  Because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," Kentucky v. Graham, 473 U.S. 159, 166 (1985), Plaintiff's official-capacity claims for damages against Mr. Eng are indistinguishable from his claims against the EPA.

is no corresponding duty under state tort law." <u>Cecile Industries, Inc. v. United States</u>, 793 F.2d 97, 99 (3d Cir. 1986) (citation omitted).  In other words, "the FTCA was not intended to redress breaches of federal statutory duties." <u>Sellfors v. United States</u>, 697 F.2d 1362, 1365 (11th Cir. 1983); <u>see also</u> <u>Johnson v. Sawyer</u>, 47 F.3d 716, 727-28 (5th Cir. 1995) (citing numerous cases so holding).

Plaintiff's claims against the Federal Defendants in Counts One, Two, and Three of the Amended Complaint are all based on the alleged failure of the EPA to conduct an adequate investigation into Plaintiff's February 11, 2005 complaint about the casino emissions.  Specifically, Plaintiff alleges that the Federal Defendants were negligent in conducting an inadequate investigation of the casino emissions, (Am. Compl. ¶ 9), that they were negligent in failing to warn Plaintiff about the emissions, (<u>id.</u> at ¶ 15), and that this inadequate investigation and failure to warn constituted an intentional infliction of emotional distress.[5]  (<u>Id.</u> at ¶ 16.)  These alleged failures of the EPA and its employees to investigate the casino emissions to Plaintiff's satisfaction are not acts or omissions for which "a private person[] would be liable to the claimant" under New Jersey law, 28 U.S.C. § 1346(b), but instead are, at best,

---

[5]  The final count in the Amended Complaint, Count Five, does not state a separate cause of action, but is instead a demand for $10,000,000 in compensatory and punitive damages. (Am. Compl. ¶ 18.)

"alleged breaches of a duty arising solely out of federal [statutory] law." Cecile Industries, Inc., 793 F.2d at 99 (citation omitted). Because the Court does not have jurisdiction over such claims, it will grant the Federal Defendants' motion to dismiss Plaintiff's claims premised upon New Jersey common law and dismiss the Federal Defendants as parties to this lawsuit.

D.    **State Law Claims Against Remaining Defendants**

The Court having dismissed Plaintiff's federal law claims in Count Four and the Federal Tort Claims asserted against the Federal Defendants, there are no claims in this case over which this Court has original jurisdiction, as all of Plaintiff's remaining claims are based on New Jersey tort law and, as the Court has already found, there is not complete diversity among the parties. See Schneider v. United States, No. 06-3200, 2007 WL 674719, at *1 (D.N.J. Feb. 27, 2007). Under 28 U.S.C. § 1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if the district court has dismissed all claims over which it has original jurisdiction." § 1367(c). As a general rule, absent exceptional circumstances, "pendant jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." Shaffer v. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("where the claim over which the district court has original jurisdiction is

dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so").

The Court does not find any justification for deciding Plaintiff's pendant state law claims in this case.  When Plaintiff originally filed this action, there was no basis for this Court's original jurisdiction over his manifestly state law claims asserted against non-diverse parties.  (Compl. ¶¶ 9-16.) After the State and City Defendants moved to dismiss the case for lack of subject matter jurisdiction, the Court permitted Plaintiff to file an Amended Complaint in order to invoke the Court's federal question jurisdiction under 28 U.S.C. § 1331, and the ostensibly federal claims contained in Count Four of the Amended Complaint were introduced into the lawsuit.  The Court having dismissed those federal claims, interests of judicial economy and comity weigh in favor of having Plaintiff's state law claims litigated, if at all, in New Jersey's courts.  This conclusion is consistent with the interests of fairness to the parties, given that nearly every defendant has moved, at one point or another, to dismiss this case on account of this Court's lack of jurisdiction over Plaintiff's claims.

Pursuant to 28 U.S.C. § 1367(c), the Court thus declines to exercise supplemental jurisdiction over Plaintiff's state law

claims and will dismiss those claims as to all parties to this
action.

     **E.**    **Motion to File a Second Amended Complaint**

Finally, the Court will deny Plaintiff's motion to file a
second amended complaint.  Under Federal Rule of Procedure
15(a)(2), "the court should freely give leave [to amend the
complaint] when justice so requires."  Although "the grant or
denial of an opportunity to amend is within the discretion of the
District Court, . . . outright refusal to grant the leave without
any justifying reason appearing for the denial is not an exercise
of that discretion."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).
Among the legitimate bases for denying a plaintiff the
opportunity to amend the complaint are "substantial or undue
prejudice, . . . truly undue or unexplained delay, repeated
failures to cure the deficiency by amendments previously allowed,
or futility of amendment."  <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406,
1414 (3d Cir. 1993) (citation omitted).

While recognizing the liberality with which both motions to
amend and <u>pro</u> <u>se</u> pleadings are treated, the Court is convinced
that Plaintiff should not once again be permitted to amend his
complaint in this action, both on account of his previous failure
to cure the deficiencies in his pleadings and the futility of the
proposed amendment.  <u>Id.</u>  As the Court explained, <u>supra</u>, when
Plaintiff initially filed this lawsuit, the claims asserted in
his Complaint plainly lacked a basis for the Court to exercise

subject matter jurisdiction over the action.  After certain defendants moved to dismiss the Complaint on account of this evident lack of jurisdiction, Plaintiff was granted leave to file his first Amended Complaint.  When given the opportunity to address the jurisdictional defect in his initial pleading, Plaintiff's responsive allegation of "Constitutional Violations & Violations of Law - Civil Rights" left the defendants to guess at the bases for Plaintiff's claimed right to recover.  (Am. Compl. ¶ 17.)  Rather than curing the deficiency in his pleadings, Plaintiff's puzzling amendment merely amplified the insufficiency of his Complaint and prolonged the dismissal of his state-law claims.

The futility of permitting Plaintiff another opportunity to amend his Complaint is evidenced by the fact that his new pleading, just as the claims contained in his now-dismissed Count Four, is very difficult to decipher and similarly insufficient to put any of the defendants on notice as to what violations of law they are alleged to have committed.  See In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.").  In its November 20, 2007 letter to Plaintiff in response to his application to proceed in forma pauperis in Schneider II, the Court informed Plaintiff that his filing was "unclear," that the Court could not decipher "what each Defendant allegedly did to

[Plaintiff] and how [he was] harmed by that conduct," and asked Plaintiff to "clarify what happened to . . . [him and] who inflicted what injuries on [him]."  Schneider II, dkt. item 2. Plaintiff has not responded to these concerns in his motion to amend, but instead seeks only to "incorporate the additional Best of Life Park Apartment Defendants and the newly charged HUD Defendants, together with the additional alleged violations of law by all Defendants as presented in [his] Civil Complaint . . . [in Schneider II] into the instant Civil Complaint."  (Pl.'s Br. 3-4.)  In the face of the Court's express instructions as to how to bring his filings into compliance with the undemanding requirements of Rule 8(a), F. R. Civ. P., Plaintiff has effectively resubmitted the pleading that the Court has already advised Plaintiff was insufficient to state a claim.

Based on Plaintiff's previous failure to cure the deficiencies in his pleadings and his unwillingness to respond to the Court's and the defendants' concerns about the clarity and meaning of his submissions, the Court finds that permitting Plaintiff once again to amend his Complaint would be futile, and that leave to amend is not in order.  The proposed Second Amended Complaint, in other words, suffers from the same deficiencies that were previously pointed out to Mr. Schneider, to the prejudice of the other parties which are entitled to notice of each claim, against each defendant, of a short, plain statement of each proposed claim and the jurisdictional basis for each.

While the rules do not require much, this proposed third effort at compliance falls far short, as explained above.  Accordingly, Plaintiff's motion to amend will be denied.

## III. CONCLUSION

For the reasons explained above, the Court will grant Defendants' motions to dismiss.  The Court will also dismiss Plaintiff's purported federal claims in Count Four against the nonmoving defendants.  The Court declines to exercise supplemental jurisdiction over the remaining claims arising out of state law, which are dismissed without prejudice.  Finally, Plaintiff's motion to file a Second Amended Complaint will be denied.  The accompanying Order will be entered.


**March 7, 2008**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           United States District Judge